EXHIBIT A

| STATE OF MAINE | SUPERIOR COURT |
| PENOBSCOT, ss | CIVIL ACTION |
| | DOCKET NO.: CV-23-__ |

YASSER FARRAG, M.D., )
)
Plaintiff )
)
v. )
)
ST. JOSEPH HOSPITAL, )
)
And )
)
NES MEDICAL SERVICES OF NEW )
ENGLAND, INC., )
)
Defendants )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Plaintiff Yasser Farrag, M.D. and files this Complaint and Demand for Jury Trial ("Complaint") against Defendants St. Joseph Hospital and NES Medical Services of New England, Inc. (collectively "Defendants") as follows.

## PARTIES

1. Plaintiff Yasser Farrag, M.D. ("Plaintiff" or "Dr. Farrag") is an individual who at all times relevant to this litigation and while working for Defendants at St. Joseph Hospital, resided in Bangor, Penobscot County, Maine. Currently, Plaintiff lives in San Francisco, San Francisco County, California.

2. Upon information and belief, Defendant St. Joseph Hospital (generally "SJH" or the "Hospital") is a non-profit corporation formed pursuant to the laws of the State of Maine with an established place of business in Bangor, Penobscot County, Maine.

3. Upon information and belief, Defendant NES Medical Services of New England, Inc. (generally "NES") is a business corporation formed pursuant to the laws of the State of Maine that, as set forth herein, transacts business within Maine, including, but not limited to transacting business in Bangor, Penobscot County, Maine.

**VENUE, JURISDICTION AND COMPLIANCE WITH CONDITIONS PRECEDENT**

4. Plaintiff repeats and re-alleges all prior paragraphs of this Complaint as if set forth more fully herein.

5. Venue in this Court is proper pursuant to 14 M.R.S. § 501, because, as is set forth herein, Bangor, Penobscot County, Maine is the county where the cause of action took place.

6. Alternatively, venue in this Court is proper pursuant to 14 M.R.S. § 505, because, as is set forth herein, at all times relevant to this litigation, SJH has had an established place of business in Bangor, Penobscot County, Maine.

7. As set forth herein, this Court has personal and subject matter jurisdiction over the parties as the events giving rise to this civil action occurred within the State of Maine.

8. On or about October 6, 2022, Plaintiff filed a Complaint of Discrimination with the Maine Human Rights Commission (the "MHRC") against Defendants captioned *Farrag, M.D. v. St. Joseph Hospital and NES Medical Services of New England, Inc.*, E22-0332-A & B.

9. On or about April 28, 2023, the MHRC issued Plaintiff right-to-sue letters. 5 M.R.S. §§ 4612(6); 4622(1)(C).

10. Plaintiff has complied with all conditions precedent to the maintenance of the instant civil action.

## RELEVANT BACKGROUND FACTS

11. Plaintiff repeats and re-alleges all prior paragraphs of this Complaint as if set forth more fully herein.

12. On or about March 14, 2022, Plaintiff entered into a Physician Agreement (at times, the "Agreement") with NES. The Agreement expressly states that it is to be interpreted and construed in accordance with the laws of the State of Maine.

13. Per the Agreement, NES engages in the business of contracting with medical institutions to staff and to service the medical care facilities of those institutions and provides staffing and services by contracting with individual physicians (like Plaintiff) who agree to make their professional services available.

14. Per an addendum to the Agreement, NES agreed to pay Plaintiff to work as the Medical Director for SJH (at the Hospital's place of business in Bangor, Maine) and to provide him with other compensation in exchange for his services.

15. Upon information and belief, NES placed Plaintiff in this position at the Hospital pursuant to an Exclusive Hospitalist Services Agreement between itself and Covenant Health, Inc., a regional non-profit health and elder care delivery network of which SJH is a member. Upon information and belief, the terms of the Exclusive Hospitalist Services Agreement called for NES to be compensated for *inter alia*, providing Plaintiff's services as the Hospital's Medical Director.

16. Plaintiff served in this role from approximately April 1, 2022 until June 13, 2022 when Defendants terminated his employment. During this period, Plaintiff performed services for wages or other remuneration under a contract of hire, written or oral, expressed or implied for NES and for SJH.

17. During the period that Plaintiff worked as its Medical Director, the Hospital controlled the terms and conditions of his employment. Its employees supervised his daily activities and controlled the conditions of his employment, his work assignments and the amount that Plaintiff worked.

18. In order to work at SJH, Plaintiff needed to have hospital privileges there. (Privileges authorize medical practitioners for a specific practice of patient care in a specified healthcare facility, like the Hospital. Healthcare facilities grant physicians privileges based on their current medical credentials and previous performance.)

19. SJH granted Plaintiff temporary Hospitalist Medicine/Inpatient Medicine privileges on or about April 12, 2022. Materials that the Hospital sent Plaintiff in conjunction with granting Plaintiff temporary privileges indicated that SJH was limiting his privileges for 60 days (through June 11, 2022), "with one renewal of an additional sixty-day period if necessary."

20. According to materials that the Hospital sent Plaintiff in conjunction with doing so, among the required qualifications for being granted privileges were "[c]ertification in Internal Medicine by the American Board of Internal Medicine or by the American Osteopathic Board of Internal <u>or its equivalent</u>." (Emphasis supplied.)

21. In addition, regarding applications for appointment to St. Joseph's Medical Staff, in relevant part, the Hospital's Medical Staff Bylaws, Rules and Regulations ("Bylaws") state that doctors of medicine (like Plaintiff) must provide "documentation of board certification (<u>or indicating that the applicant is pursuing and on track to achieve</u>) by a Board included in the American Board of Medical Specialties (ABMS) . . .." (Emphasis supplied.)

22. Notwithstanding the foregoing, SJH's Bylaws also explicitly state that the Hospital "may, upon request of the Department Chief and recommendations of the Credentials Committee and Medical Executive Committees, waive the requirement for board certification."

23. At all times relevant hereto, Plaintiff has been board certified in internal medicine by the National Board of Physicians & Surgeons.

24. The American Board of Internal Medicine ("ABIM") is a Board included in the American Board of Medical Specialties. Plaintiff planned to sit for a recertification examination administered by ABIM in October 2022 and informed NES' Chief Medical Officer, Steven Wexler, M.D. of this in April 2022. Plaintiff informed NES' National Hospitalist Director Jose Aguirre, M.D. of this in May 2022.

25. Before terminating his employment, no one at SJH or at NES ever informed Plaintiff that the timing of his taking the ABIM recertification examination in October 2022 would be problematic, much less that it would affect and/or cost him his job at the Hospital.

26. When Plaintiff served as SJH's Medical Director, the Hospital's Vice President for Medical Affairs was David Koffman, M.D. and Plaintiff reported to him.

27. Upon information and belief, at all times relevant hereto, the Hospital employed Dr. Koffman and his acts and/or omissions as set forth herein were in the course and scope of his employment with SJH.

28. During his time at St. Joseph, Plaintiff reported a number of issues to Dr. Koffman that Plaintiff believed jeopardized patient safety and care and were potentially illegal.

29. This included but was not limited to Plaintiff reporting to Dr. Koffman that cardiology doctors were not seeing patients for consultations when requested to do so. Plaintiff

specifically indicated to Dr. Koffman that this lack of response compromised patient care (with potentially fatal complications) and raised malpractice concerns.

30. Plaintiff also reviewed records indicating that a cardiology doctor and physician's assistant had seen patients when this had not actually occurred. Plaintiff reported to Dr. Koffman that this potentially constituted Medicare fraud.

31. Dr. Koffman also requested that the group of physicians that Plaintiff managed (hospitalists) start seeing children. Plaintiff told him that the hospitalist group did not believe that they should do so because of Medicare (billing) fraud concerns and liability concerns – i.e., that caring for these patients raised issues concerning: A. Providers potentially being subject to malpractice lawsuits; B. Providers potentially placing their licenses in jeopardy or getting in trouble with the Maine Board of Licensure in Medicine for treating patients outside of their specialty, as none of them were trained to treat pediatric patients; and C. Liability related to insurance fraud based upon NES billing for hospitalists treating pediatric patients.

32. Dr. Farrag also made Jonathan Woolery, M.D., NES' Medical Director during the beginning of his tenure at SJH, Thomas Bastian, NES' Vice President of Operations when Plaintiff started working at the Hospital and Dr. Wexler aware of the issues concerning SJH's cardiology practice and hospitalists treating pediatric patients as set forth herein.

33. Dr. Farrag also made Dr. Wexler, Mr. Bastian and Dr. Woolery's successor, Dr. Aguirre, aware of additional health, safety and liability concerns that he had related to other practices at the Hospital.

34. This included members of SJH's emergency room ("ER") department pushing to admit patients for financial reasons even though the Hospital lacked the ability to care for them.

Additionally, members of SJH's ER department also refused to order certain tests because they were concerned that it might require their patients to be transferred from the ER directly into a higher level of care hospital (as opposed to being admitted to the Hospital). Instead, they would prematurely call hospitalists to admit their patients to force the hospitalists to run the necessary tests.

35. The foregoing allowed the ER to wash its hands of the patient; instead of waiting with (and caring for) a patient for hours, ER doctors could treat more patients and increase their metrics and compensation. This practice also financially benefited the Hospital: for any patient that it admitted, including patients admitted before being transferred elsewhere for higher level care, SJB received a Diagnosis Related Group ("DRG") payment – a lump sum payment from insurance.

36. The foregoing served the financial needs of the Hospital and the ER, however, it imposed huge potential liability on the hospitalists. They were being asked to admit patients not knowing the full medical picture. More importantly, it risked patients becoming sicker and suffering additional, severe complications, including death.

37. Dr. Farrag also made Dr. Wexler aware of health, safety and liability concerns that he had related to a general surgeon, Joanmarie Pellegrini, M.D. trying to "dump" a problematic surgical patient on the hospitalist team, rather than having another member of her team take over as the patient's surgical provider. Specifically, the surgery team wanted to cease caring for a complicated surgical patient and hand it over to hospitalists unable to treat postoperative surgical dressing changes or postoperative surgical complications such as bleeding, abscess, gangrene, or other conditions requiring additional surgical intervention.

38. Upon information and belief, at all times relevant hereto, NES employed Drs. Woolery, Wexler and Aguirre and Mr. Bastian and their acts and/or omissions herein were in the course and scope of their employment.

39. Dr. Farrag also made Dr. Koffman aware of his concerns related to the foregoing matters.

40. Dr. Farrag made the foregoing reports concerning matters that he reasonably believed jeopardized patient safety and care and were potentially illegal in good faith.

41. On or about June 10, 2022, Plaintiff composed an email to the Office of the Inspector General at the Centers for Medicare & Medicaid Services concerning the above-described Medicare fraud concerning the cardiology practitioners. He did so due to Dr. Koffman's persistent failure to address the issue.

42. As Plaintiff was drafting the email, he had to leave his office at the Hospital briefly to care for a patient. When he returned, Dr. Koffman was looking at his computer monitor that displayed the email.

43. On or about June 13, 2022 (in the early afternoon hours), Plaintiff received an email from Dr. Koffman (on which he copied Dr. Aguirre) setting up a meeting at Dr. Koffman's office at the Hospital at 5:00 p.m. that day.

44. When Plaintiff arrived at Dr. Koffman's office for the meeting, Dr. Koffman and Plaintiff were the only ones physically present. Dr. Aguirre appeared via video conference.

45. As soon as they sat down, Dr. Koffman turned to Plaintiff and said something to the effect of, "This is not going to be easy, but we decided that today will be your last day as we are not renewing your privileges."

46. Of course, Plaintiff was shocked and taken by surprise. When Plaintiff asked why, Dr. Koffman claimed it was because of his lack of board certification.

47. Dr. Farrag subsequently received a letter signed by Dr. Koffman and Mary Prybylo, the Hospital's Senior Vice President and President, stating that Plaintiff's "appointment to the St. Joseph Medical Staff and [his] temporary privileges were terminated on June 14, 2022."

48. This prevented Plaintiff from working any further at St. Joseph.

49. NES subsequently terminated the Physician Agreement it had with Plaintiff.

50. The Hospital's and Dr. Koffman's purported rationale for firing Dr. Farrag was false and SJH, NES and Dr. Koffman fired him notwithstanding the fact that there were approximately two months left in the period in which Dr. Farrag had temporary privileges.

51. The Hospital's and Dr. Koffman's purported rationale for firing Dr. Farrag was false and SJH, NES and Dr. Koffman fired him notwithstanding the fact that, pursuant to SJH's Bylaws, the Hospital could have waived the Board certification requirement.

52. The Hospital's and Dr. Koffman's purported rationale for firing Dr. Farrag was false and SJH, NES and Dr. Koffman fired him notwithstanding the fact that the Hospital could have granted him privileges that were not durationally limited.

53. Upon information and belief, the Hospital, NES and Dr. Koffman took and failed to take the above-described adverse actions towards Dr. Farrag in whole or in part due to his reporting unsafe or illegal conditions and deviations from the relevant standard of patient care as set forth herein.

54. Upon information and belief, the Hospital, NES and Dr. Koffman fired Dr. Farrag in whole or in part due to his reporting unsafe or illegal conditions and deviations from the relevant standard of patient care as set forth herein.

55. Pleading in the alternative, upon information and belief, NES fired Dr. Farrag in whole or in part because Dr. Koffman and the Hospital exhibited discriminatory animus towards

Plaintiff. NES functioned as the conduit or "cat's paw" of this prejudice. Upon information and belief, NES did so in whole or in part because it feared it would lose its existing contract with the Hospital and/or to ingratiate itself to SJH and/or Dr. Koffman in order to earn an additional contract with the Hospital to provide ER personnel.

56. Throughout the time that Plaintiff worked for Defendants, he performed his job satisfactorily and the reason(s) they and Dr. Koffman gave for terminating his employment were not accurate. Instead, as set forth herein, they and Dr. Koffman terminated his employment in retaliation and in response to his engaging in protected activity under the Maine Whistleblowers' Protection Act, 26 M.R.S. § 831, *et seq.* (generally the "MWPA").

57. As a result of the foregoing and as set forth herein, Plaintiff has sustained damages.

**COUNT I – VIOLATION OF THE MAINE WHISTLEBLOWERS' PROTECTION ACT
AS ENFORCED THROUGH THE MAINE HUMAN RIGHTS ACT
(26 M.R.S. § 831, *et seq.*; 5 M.R.S. § 5 M.R.S. § 4551, *et seq.*)
(BOTH DEFENDANTS)**

58. Plaintiff repeats and re-alleges all prior paragraphs of this Complaint as if set forth more fully herein.

59. Upon information and belief, at all times relevant herein, SJH was an employer subject to the MWPA.

60. Upon information and belief, at all times relevant herein, NES was an employer subject to the MWPA.

61. Upon information and belief, at all times relevant herein, Plaintiff was an employee or eligible employee of Defendants, who was qualified and eligible for the MWPA's protections. Specifically, as set forth herein, Dr. Farrag was a person who performed a

service for wages or other remuneration under a contract of hire, written or oral, expressed or implied for Defendants.

62. 5 M.R.S. § 4572(1)(A) of the Maine Human Rights Act provides a direct cause of action for employees like Plaintiff who allege discrimination based on MWPA-protected whistleblowing activity. *Fuhrmann v. Staples Office Superstore E.*, 2012 ME 135, ¶ 14, 58 A.32d 1083.

63. As set forth herein, Plaintiff engaged in protected activity under the MWPA and Defendants retaliated against him by terminating his employment as a result thereof.

64. Specifically, as set forth herein, Plaintiff, in good faith reported orally or in writing to Defendants what he had reasonable cause to believe were violations of a law or rule adopted under the laws of the State of Maine, a political subdivision thereof or the United States.

65. Pleading in the alternative, as set forth herein, Plaintiff, in good faith reported orally or in writing to Defendants what he had reasonable cause to believe were conditions or practices that would put at risk the health or safety of himself or other individuals.

66. Pleading in the alternative, as set forth herein, Plaintiff, acting in good faith, refused to carry out directives to engage in activity that would be a violation of a law or rule adopted under the laws of the State of Maine, a political subdivision thereof this State or the United States or that would expose him or other individuals to conditions that would result in serious injury or death, after having sought and been unable to obtain a correction of the illegal activity or dangerous condition from Defendants.

67. Pleading in the alternative, as set forth herein, Plaintiff, acting in good faith and consistent with state and federal privacy laws, reported to Defendants or to the appropriate licensing, regulating or credentialing authority, orally or in writing, what he had reasonable cause to believe were acts or

omissions constituting a deviation from the applicable standard of care for a patient(s) by SJH, who was charged with the care of that/those patient(s).

68. As set forth herein, notwithstanding that throughout the time that Plaintiff worked for Defendants, he performed his job satisfactorily, they terminated his employment in retaliation for and in response to his engaging in protected activity under the MWPA.

69. Defendants, including their agents and/or employees, committed the foregoing acts and omissions with express or actual malice.

70. Pleading in the alternative, the acts and omissions of Defendants, including their agents and/or employees, although motivated by something other than ill will toward Plaintiff, were so outrageous that malice toward Plaintiff can be implied.

71. As a result of Defendants' discriminatory and retaliatory actions as set forth herein, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory and punitive damages, including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff respectfully requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief and all such other and further relief to which he is entitled.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT
## (SJH)

72. Plaintiff repeats and re-alleges all prior paragraphs of this Complaint as if set forth more fully herein.

73. As set forth herein, Plaintiff had a valid contract, the Physician Agreement, with NES. As set forth herein, the Agreement provided for compensation and other benefits to Plaintiff.

74. As set forth herein, SJH, through its employee, Dr. Koffman, interfered with that contract by fraud or intimidation by effectuating the termination of Plaintiff's employment relationship with the Hospital in retaliation for Plaintiff's whistleblowing activity, which led to NES terminating the Agreement.

75. Specifically, as set forth herein, Dr. Koffman made false representations of material facts regarding the basis/ses for firing Plaintiff and he did so knowingly or with reckless disregard for their truth in order to induce NES to act or refrain from acting in justifiable reliance thereon.

76. The foregoing caused Plaintiff damages, including, but not limited to the loss of the compensation and other benefits to which Plaintiff was entitled pursuant to the Agreement, which Dr. Farrag would have realized but for SJH's interference, through its employee and agent, Dr. Koffman.

WHEREFORE, Plaintiff respectfully requests that the Court award him all damages and all such other and further relief to which he is entitled.

## COUNT III – BREACH OF CONTRACT
### (NES)

77. Plaintiff repeats and re-alleges all prior paragraphs of this Complaint as if set forth more fully herein.

78. As set forth herein, Plaintiff had a valid contract, the Physician Agreement, with NES.

79. NES' termination of same under the circumstances set forth herein constitutes a breach of this contract.

80. The foregoing caused Plaintiff damages, including, but not limited to the loss of the compensation and other benefits to which Plaintiff was entitled pursuant to the Agreement.

WHEREFORE, Plaintiff respectfully requests that the Court award him all damages and all such other and further relief to which he is entitled.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims to which that right extends.

Respectfully submitted this May 9, 2023.

*[signature]*

Erik Peters, Bar No. 9188
Attorney for Plaintiff Yasser Farrag, M.D.

KELLY, REMMEL & ZIMMERMAN, P.A.
53 Exchange Street
Portland, Plaintiff 04101
(207) 775-1020
Epeters@krz.com